Christian Quarries, Inc. v. Commissioner.
Christian Quarries, Inc. v. Commissioner
Docket No. 50376.
United States Tax Court
T.C. Memo 1956-55; 1956 Tax Ct. Memo LEXIS 240; 15 T.C.M. (CCH) 244; T.C.M. (RIA) 56055; March 8, 1956
Lyman S. Hulbert, Esq., for the petitioner. John L. Carey, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies *241 in petitioner's income tax of $2,092.95 and $4,615.38 for the taxable years 1947 and 1948, respectively. The contested issued is whether petitioner is entitled to exclude from gross income its entire net earnings as patronage dividends for each of the taxable years 1947 and 1948. Findings of Fact The stipulated facts are found accordingly. Petitioner is a cooperative marketing association organized, with capital stock, on February 4, 1946, under the provisions of the laws of Kentucky. It keeps its books and records upon an accrual method of accounting and files its corporate tax returns on the calendar year basis. Petitioner's tax returns for 1947 and 1948 were filed with the collector of internal revenue for the district of Kentucky at Louisville. Petitioner's principal operation consists of quarrying and crushing limestone to obtain crushed rock and agricultural lime. Petitioner was organized with capital stock consisting of 150,000 shares of common stock of a par value of $1 per share and 1,000 shares of preferred stock of a par value of $100 per share. On December 31, 1947, there were 530 shares of preferred stock and 45 shares of common stock outstanding. During 1948 *242 petitioner issued 618 additional shares of common stock. Petitioner's articles of incorporation provided that its preferred stock could be owned or held by anyone. Such stock had no voting rights. Noncumulative dividends not to exceed six per cent per annum were permissible at the discretion of petitioner's directors. Upon dissolution or distribution of the assets of the association the holders of preferred stock were entitled to receive the par value of their stock, plus any dividends declared thereon and unpaid before any distribution was made on the common stock. Petitioner's common stock could be issued to and held only by producers of agricultural products which met the qualifications for membership. The common stock was transferable to eligible persons only with the consent of the directors. No stockholder could have more than one vote, regardless of the number of shares held. Noncumulative dividends of not to exceed six per cent per annum could be paid on the common stock, if, as, and when declared by the board of directors. Petitioner's bylaws provided in part as follows: "ARTICLE II "MEMBERS AND PATRONS "Section 1. Qualification of members - Any person, including *243 lessees and tenants and such lessors and landlords who receive as rent any part of the crops raised on the leased premises, who is a producer of agricultural products may become a member of the association by acquiring a share of common stock, and meeting such other conditions as may be prescribed by the board of directors. "Section 2. Nonmember patrons - (a) The association may transact any authorized business with nonmembers provided that the total value of business transacted by the association with nonmembers in any fiscal year shall not exceed the total value of business transacted with its members. Nonmember patrons shall be treated the same as members with respect to the distribution and allocation of savings. The association may have the right to retain an amount of the patronage allocation of a nonmember patron equal to the par value of one share of common stock, if such patron is eligible for membership in the association. * * *
"ARTICLE X "ALLOCATION AND DISTRIBUTION OF SAVINGS "Section 1. Allocation of savings. - At the end of each fiscal year the board of directors shall allocate the savings of the association in the following order and manner: "(a) First, *244 to the establishment of such reasonable reserves and/or surpluses as may be necessary to the conduct and maintenance of the business of the association. "(b) Second, to payment of a reasonable return on the outstanding preferred stock of the association, but not to exceed 6% per annum. Returns on preferred stock shall not be cumulative, but when the affairs of the association in any year are such that funds are available therefore, the directors may declare and pay a return for a previous year or years in which no return was paid, providing the rate of such return shall not exceed 6% per annum for any of said years. "(c) Third, to payment of a reasonable return on the outstanding common stock of the association, when returns have been declared and paid on the preferred stock for the current year and all previous years, and when and if declared by the board of directors, but not to exceed 6% per annum. "(d) Fourth, the remaining savings shall be allocated to the patrons contributing thereto in proportion to each patron's dollar volume of business done with the association. At the discretion of the board of directors allocation of savings may be made on different classes or kinds *245 of products or supplies handled. "Section 2. Distribution of patronage allocations. "(a) The patronage allocations determined in the manner provided in Section 1(d) hereof shall be distributed and paid, at the discretion of the board of directors, in cash or in certificates of common or preferred stock and/or credits on common or preferred stock, or ad interim certificates representing tractional parts thereof, subject to conversion into full shares. "(b) In the case of nonmember patrons eligible for membership in the association patronage allocations shall be applied first to the payment of the purchase price of at least one share of common stock. "(c) Patronage allocations and cash returns on capital stock may be applied at the discretion of the board of directors to the payment of any indebtedness of the patron to the association." For 1946 and 1947 petitioner filed with the respondent a claim for exemption from Federal income taxes under section 101(12) of the 1939 Code. On or about October 15, 1948, petitioner was advised that it did not qualify for exemption under the provisions of that section. During the taxable years involved all net earnings were retained by the *246 association. While no specific entries were made on petitioner's permanent books for the year 1947, work papers were prepared wherein mathematical computations were made allocating to each patron his share of the net earnings for that year. No such preliminary computation was made for the year 1948. Sometime after the petitioner was advised that it did not qualify for exemption from taxation, the preliminary computations for the year 1947 were revised to reflect certain income taxes it would be required to pay. The only notice that went to patrons covering the savings of petitioner in the years 1947, 1948, and 1949 was the issuance of certificates for 618 shares of common stock to 618 nonmember patrons. The savings covered by the 618 certificates were those effected in the year 1947. Petitioner's minute books do not disclose that any action was taken or discussion had with respect to patronage dividends at any meeting of the stockholders or the directors held in the years 1947, 1948, and 1949. Sometime after the close of 1951 a notice was sent to petitioner's members, setting forth their equity in the retained savings for the years 1947 to 1951, inclusive. The notice further stated *247 certificates of interest had not been issued because the association was awaiting final determination of pending controversies with Federal and state authorities concerning the amounts of taxes due for the respective years. Petitioner filed timely Federal corporation income tax returns for each of the years 1947 and 1948, and excluded from gross income on such returns the amounts of $7,000.94 for 1947 and $19,108.12 for 1948 as "Undistributed Net Savings". The respondent denied the claimed exclusions with the explanation that no such dividends were declared or paid, and that there was no pre-existing legal obligation under which any right arose whereby the petitioner's patrons were entitled to such earnings without some corporate action. The petitioner has failed to carry its burden of showing that the respondent's determination with respect to the exclusion of the so-called patronage dividends was erroneous. Opinion LEMIRE, Judge: The question for decision is whether the petitioner is entitled to an exclusion of its net savings as patronage dividends for each of the taxable years 1947 and 1948. All other issues raised have been waived by petitioner in its brief. It has *248 been the recognized practice of the Treasury and the courts to permit a nonexempt cooperative association to exclude so-called patronage dividends or payments upon the theory that such associations are organized for the purpose of furnishing its patrons goods at cost or for obtaining the highest market price for produce furnished by them and sold through the association. The acceptance of the practice, however, has been limited to cases in which the rights, rebates, or refunds arise either by charter, bylaws, or some other contract and are not dependent on some corporate action taken after the receipt of the money. United Cooperatives, Inc., 4 T.C. 93; Southwest Hardware Co., 24 T.C. 75. Neither the statutes of Kentucky, [1] under which petitioner was organized, nor petitioner's charter contains any provision relative to patronage dividends. Petitioner makes no claim of the existence of any contract with its patrons. It contends that the legal obligation to allocate its savings to its patrons arises by virtue of its bylaws and more particularly under the provisions of Article X thereof, which is set forth in full in our findings of fact. We do not agree. *249 If the bylaw in question is construed as being mandatory, we think it is inconsistent with the provisions of its charter. Bylaws are valid only when consistent with the charter. Associated Grocers of Ala., Inc. v. Willingham, 77 Fed. Supp. 990; 8 Fletcher, Cyclopedia Corporations (perm. ed.), sec. 4190. Article X, section 1(b) and (c), if mandatory, requires the board of directors to allocate dividends of not to exceed six per cent per annum on both its preferred and common stock. Subsection (b) permits the directors to declare and pay a return on preferred stock for a previous year or years in which no return was paid. Subsection (c) restricts the payment of dividends on common stock when returns have been declared and paid on the preferred stock for the current and all previous years. The petitioner's charter confers discretion on its directors to pay dividends on its preferred or its common stock of not to exceed six per cent per annum. It further provides that such dividends on the preferred or common are noncumulative. There is no authorization to pay a return on preferred stock for a previous year or years in *250 which no return was paid, nor is there any restriction on the power of the board to declare and pay dividends on the common stock only after a return has been paid on the preferred stock for all previous years. Therefore, such provisions contained in the bylaws are inconsistent with and repugant to petitioner's charter. To sustain the validity of the bylaws in question it must, therefore, be construed as permissive and not mandatory. The record shows that in the taxable years 1947 and 1948 the board of directors did not comply with the bylaw. It is not unreasonable to infer that the board interpreted the bylaw as permissive and not mandatory. The $618 of earnings distributed in 1948 was not distributed to patrons but was paid to shareholders in common stock and constitutes dividends as defined by section 115 of the Internal Revenue Code of 1939. Fruit Growers Supply Co., 21 B.T.A. 315, affd. 56 Fed. (2d) 90. On this record we think the petitioner has not met its burden of showing a preexisting legal obligation under which any right arose whereby its patrons were entitled to such earnings without some corporate action. Therefore, we sustain the respondent *251 on this issue. Decision will be entered for the respondent. Footnotes
1. Revised Statutes, Sec. 272.100-272.350.↩